# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| LARESEA WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-00859-JEO |
| | ) |
| AMERICAN UNITED LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action arises out of a claim for benefits under a life insurance policy issued by defendant American United Life Insurance Company ("AUL") on the life of Corine Woods (deceased), the mother of plaintiff Laresea Woods ("Plaintiff"). Plaintiff, the beneficiary of her mother's life insurance policy, alleges that AUL wrongfully denied her claim for benefits following her mother's death and then, after acknowledging that benefits should have been paid, misrepresented the amount of the policy in an effort to get her to sign a release. She has asserted state-law claims against AUL for breach of contract, fraud, suppression/concealment, bad faith, deceit, and negligent screening, hiring,

1

training, and supervision. (Doc.[1] 1). She seeks to recover compensatory and punitive damages from AUL and has requested a trial by jury on her claims.

The case is before the court on AUL's motion to dismiss Plaintiff's state-law claims and her demands for punitive and extra-contractual damages, and to strike her demand for a jury trial. (Doc. 6). AUL contends that all of Plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and that Plaintiff is not entitled to recover punitive or extra-contractual damages under ERISA or to a trial by jury. For the reasons stated below, the court concludes that the motion to dismiss/strike is due to be granted and that Plaintiff should be afforded an opportunity to amend her complaint and replead her claims under ERISA.

## I. FACTS[2]

Corine Woods was employed as a teacher in the Talladega County School System. (Doc. 1 at ¶ 7). In September 2003, through the county, she enrolled in a group term life insurance policy issued by AUL to Educator Benefits Corporation,

---

[1] References to "Doc.(s) __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] When considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

a wholly-owned subsidiary of the Alabama Education Association ("AEA").[3] (*Id.* at ¶ 5; Doc. 6-1 at 2, 9). The initial amount of her coverage was $50,000.00, but in 2004 she increased the coverage to $60,000.00 (with a corresponding increase in monthly premium). (Doc. 1 at ¶¶ 5-6).

Corine Woods voluntarily retired from her position as a teacher effective June 1, 2012. (*Id.* at ¶ 8). Shortly after retiring, she submitted an "Application to Continue/Port or Convert Group Insurance" to AUL, electing to continue her existing coverage and identifying Plaintiff as her primary beneficiary.[4] (*Id.* at ¶ 9; Doc. 10-1 at 6-7). To continue her coverage, Corine Woods was required to remit her insurance premium directly to AUL. (Doc. 10-1 at 7). Talladega County completed the employer's section of the application, and verified that the amount of Corine Woods's coverage was $60,000.00. (Doc. 1 at ¶ 10; Doc. 10-1 at 8-9). AUL received the application on July 12, 2012. (Doc. 10-1 at 5-9).

Corine Woods died on July 18, 2012. (Doc. 1 at ¶ 12). Plaintiff submitted a claim for life insurance benefits to AUL, but AUL denied the claim, asserting

---

[3] Plaintiff did not attach a copy of the policy to her complaint, but a copy was attached as an exhibit to AUL's motion to dismiss/strike. (Doc. 6-1). Because the policy is referenced in Plaintiff's complaint, the court may consider the policy in ruling on the motion to dismiss/strike. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.").

[4] Plaintiff did not attach a copy of the application to her complaint, but did attach a copy to her opposition to AUL's motion to dismiss/strike. (Doc. 10-1).

that Corine Woods had not applied for continuation of coverage following her retirement.  (*Id.* at ¶¶ 15-16).

In January 2015, after receiving multiple requests for reconsideration from Plaintiff's former and current counsel, AUL admitted that Plaintiff's claim for benefits should have been paid.  (*Id.* at ¶¶ 17-26).  AUL asserted that the amount of Corine Woods's insurance coverage was only $50,000.00, but told Plaintiff that it was willing to pay her $60,000.00 in exchange for a release.  (*Id.* at ¶ 33).  Plaintiff refused to sign a release, and instead filed this lawsuit.

## II.  ANALYSIS

As noted above, Plaintiff's complaint asserts state-law claims for breach of contract, fraud, suppression/concealment, bad faith, deceit, and negligent screening, hiring, training, and supervision.  In its motion to dismiss/strike, AUL argues that ERISA preempts all of Plaintiff's claims.  Plaintiff responds that her mother's insurance policy falls within the ERISA "safe harbor" exemption and therefore is not an ERISA plan.  She also argues that even if the policy is governed by ERISA, she may still pursue her claims for fraud, suppression/concealment, and deceit, which, she argues, are not preempted.

### A.     Is the Policy Governed by ERISA?

"In order to have an ERISA plan there must be (1) a plan fund or program (2) established or maintained (3) by an employer or by an employee organization

(4) for the purpose of providing, among other things, medical or death benefits (5) to participants and their beneficiaries." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982); *see* 29 U.S.C. § 1002(1) (defining an "employee welfare benefit plan").  AUL argues that the policy of insurance at issue here is such an ERISA plan, asserting that the AEA is an "employee organization" and that "the policy of insurance referenced by Plaintiff in her complaint was issued to the AEA to insure the life insurance component of an AEA employee benefit plan." (Doc. 6 at 4-5).  In support, AUL cites three opinions by federal district courts in Alabama all holding that insurance policies sponsored by the AEA are governed by ERISA. *See Karns v. Disability Reinsurance Mgmt. Servs., Inc.*, 879 F. Supp. 2d 1298, 1305 (N.D. Ala. 2012) (holding that a disability insurance policy sponsored by the AEA was a "relevant ERISA plan"); *Hicks v. American United Life Ins. Co.*, Case No. 5:10-cv-01401-CLS (N.D. Ala. Jan. 19, 2011)[5] ("In short, the disability benefits plan at issue does not fall within the [ERISA] regulatory safe harbor and the AEA is an 'employee organization' for the purposes of ERISA.  Accordingly, the plan is governed by ERISA."); *Abston v. The Murfee Group et al.*, Case No.

---

[5] A copy of the *Hicks* opinion was attached to AUL's motion to dismiss/strike and is located at Doc. 6-2.

1:06-cv-482, KD-B (S.D. Ala. Dec. 11, 2006)[6] ("The question becomes, is the [AEA] an 'employee organization' such that the Plaintiff's plan is properly governed by ERISA? … [T]he answer to that question is a resounding yes.").

The court agrees that the group term life insurance policy sponsored by the AEA here is an ERISA plan, and Plaintiff effectively admits as much. She acknowledges that the AEA is an "employee organization" and that "the group policy at issue was initially issued through the AEA." (Doc. 10 at 8 n.1). Nowhere in her opposition to AUL's motion to dismiss/strike does she dispute that the AEA group policy is an ERISA plan. She argues, however, that "it is axiomatic that some insurance policies that were originally issued as part of an ERISA plan may no longer be covered by ERISA." (*Id.*) That is what she claims occurred here. Plaintiff argues that once Corine Woods retired, made the voluntary decision to continue her life insurance coverage, and paid her insurance premium directly to AUL, her "individual" or "personal" continuation policy was no longer subject to ERISA. (*Id.* at 5-9). Plaintiff asserts that her claims against AUL "do not arise out of [the] AEA policy, but rather arise out of a policy that was *individually* and *voluntarily* continued and maintained by Corine Woods with … AUL, as the policy at issue was ported by Corine Woods following her retirement." (*Id.* at 5). She contends that this "individual voluntary" term life policy falls within the ERISA

---

[6] A copy of the *Abston* opinion was attached to AUL's motion to dismiss/strike and is located at Doc. 6-3.

regulatory "safe harbor," 29 C.F.R. § 2510.3-1(j), which excludes certain "group or group-type insurance programs" from ERISA coverage. (*Id.*)

The court need not address the merits of Plaintiff's safe harbor argument, because it is based on a faulty premise—namely, that Corine Woods's election to continue her life insurance coverage following her retirement created an individual policy separate and apart from the AEA group policy. As Corine Woods's Application to Continue/Port or Convert Group Insurance reflects, upon retirement she had the option to either "convert [her] existing life insurance coverage to an Individual Life Insurance contract" or "continue [her] existing coverage." (Doc. 10-1 at 5-6). She elected to continue her existing coverage, not convert her coverage to an individual contract. (*Id.*) In this regard, the court notes that there is no allegation in Plaintiff's complaint—and certainly no evidence—that Corine Woods was issued a new "individual" insurance contract or certificate when she elected to continue her coverage. Moreover, the "Continuation of Insurance" provision of the AEA group policy expressly provides that coverage "in force under the policy" continues "without interruption" when a person elects to continue coverage. (Doc. 6-1 at 15). Therefore, because Corine Woods's coverage continued under the AEA group policy, Plaintiff's claim for benefits necessarily arose out of that policy, an ERISA plan.

Plaintiff has cited no authority that supports her contention that when Corine Woods retired, voluntarily elected to continue her life insurance coverage, and paid the premium directly to AUL, her coverage ceased to be part of the AEA group policy and was no longer within the purview of ERISA.  Indeed, courts have consistently rejected similar arguments.  For instance, in *Lewis v. Blue Cross Blue Shield of Ga.*, 2015 WL 1475610, *3 (M.D. Ala. Mar. 31, 2015), the plaintiff and her husband were covered under a group term life insurance policy issued as part of a group plan sponsored by her employer, ESG.  When the plaintiff decided to leave her employment with ESG, she was advised that she could take the policy with her and retain coverage by paying the insurance premiums herself, which she did.  When her husband died many years later, the plaintiff submitted a claim for benefits under the policy, but the insurer denied the claim.  The plaintiff then filed suit against the insurer, raising only state-law claims.  In response to the insurer's argument that her claims were all preempted by ERISA, the plaintiff asserted that "when she left her employment with ESG, requested portability of her policy, and began making premium payments personally, her policy ceased to be part of ESG's sponsored group employee benefit plan." *Id.* at *3.  Citing *Glass*, the district court rejected the plaintiff's argument, holding that her policy "remain[ed] properly under the scope of ERISA." *Id.  See also Griggers v. Equitable Life Assur. Soc'y of the U.S.*, 343 F. Supp. 2d 1190, 1195-96 (N.D. Ga. 2004) (holding that a policy

issued under an ERISA-covered plan continued to be covered by ERISA after the plaintiff resigned her employment and kept the policy in force by paying the premium); *Albright v. Union Bankers Ins. Co.*, 85 F. Supp. 2d 1302, 1305 (S.D. Fla. 1999) ("[T]he continuation of payments by an employee into an insurance policy after his or her termination does not change coverage under a policy governed by ERISA. Rather, this constitutes a continuation of coverage, and ERISA continues to govern the insurance policy."). Plaintiff has cited no contrary authority.

Here, after Corine Woods retired from her employment with the Talladega County School System, she elected to continue her existing coverage under the AEA group policy, an employee benefits plan governed by ERISA. Consequently, her coverage remained under the scope of ERISA, notwithstanding that she was no longer employed by the County and was required to make her premium payments directly to AUL. As the above cases all hold, when an employee participates in an employee benefits plan and then keeps her coverage in force by paying the premiums herself after her employment ends, ERISA continues to govern the coverage. That is what occurred here.

**B.     ERISA Preemption**

Having determined that Corine Woods's continuation coverage remained subject to ERISA, the court turns to whether ERISA preempts Plaintiff's state-law

claims. As noted, Plaintiff argues that even if the "continued voluntary plan" between Corine Woods and AUL is governed by ERISA, her claims for fraud (Count II of her complaint), suppression/concealment (Count III), and deceit (Count V) are not preempted. (Doc. 10 at 9). In other words, she concedes that her other claims—for breach of contract (Count I), bad faith (Count IV), and negligence (Count VI)—are preempted if ERISA applies, which it does.

The Eleventh Circuit has recognized two kinds of ERISA preemption: "conflict" (or "defensive") preemption and "complete" (or "super") preemption. *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009). As the Eleventh Circuit explained in *Anthem Health Plans*:

> ERISA is one of only a few federal statutes under which two types of preemption may arise: conflict preemption and complete preemption.
>
> Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims. *Jones v. LMR Int'l, Inc.,* 457 F.3d 1174, 1179 (11th Cir. 2006). This type of preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that "relates to" an ERISA plan. 29 U.S.C. § 1144(a). Because conflict preemption is merely a defense, it is not a basis for removal. *Gully v. First Nat'l Bank,* 299 U.S. 109, 115–16, 57 S. Ct. 96, 99, 81 L. Ed. 70 (1936); *see also Ervast v. Flexible Prods. Co.,* 346 F.3d 1007, 1012 n. 6 (11th Cir. 2003) (stating that "defensive preemption ... provides only an affirmative defense to state law claims and is not a basis for removal").
>
> Complete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule. It differs from defensive preemption because it is jurisdictional in nature

rather than an affirmative defense. *Jones,* 457 F.3d at 1179 (citing *Ervast,* 346 F.3d at 1014). Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a), which has such "extraordinary" preemptive power that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." [*Metro. Life Ins. Co. v.*] *Taylor,* 481 U.S. [58] at 65–66, 107 S. Ct. [1542] at 1547. Consequently, any "cause[ ] of action within the scope of the civil enforcement provisions of § 502(a) [is] removable to federal court." *Id.* at 66, 107 S. Ct. at 1548.

Although related, complete and defensive preemption are not coextensive:

> Complete preemption is [ ] narrower than "defensive" ERISA preemption, which broadly "supersede[s] any and all State laws insofar as they ... *relate to* any [ERISA] plan." ERISA § 514(a), 29 U.S.C. § 1144(a) (emphasis added). Therefore, a state-law claim may be defensively preempted under § 514(a) but not completely preempted under § 502(a). In such a case, the defendant may assert preemption as a defense, but preemption will not provide a basis for removal to federal court.

*Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1281 (11th Cir. 2005); *accord Ervast,* 346 F.3d at 1012 n. 6 ("Super preemption is distinguished from defensive preemption, which provides only an affirmative defense to state law claims and is not a basis for removal.").

*Anthem Health Plans*, 591 F.3d at 1343-44 (footnotes omitted); *see also Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999).

This case was originally filed in this court, not removed from state court. The court's subject-matter jurisdiction is based on federal diversity jurisdiction, 28

11

U.S.C. § 1132, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00. (Doc. 1 at ¶¶ 1-3). Although the parties have addressed complete ERISA preemption in their submissions, the court's subject-matter jurisdiction is not dependent on Plaintiff's claims being completely preempted; the court has independent diversity jurisdiction. For purposes of AUL's motion to dismiss/strike, therefore, the relevant question is whether Plaintiff's state-law claims for fraud, suppression/concealment, and deceit are subject to defensive (conflict) preemption. *See Jones*, 457 F.3d at 1179 ("Plaintiffs argue that [their state-law] claims should be remanded because they are not completely preempted. Regardless of whether they are completely preempted, however, the district court has supplemental jurisdiction over these claims …. Accordingly, we consider only whether the claims are defensively preempted."); *Butero*, 174 F.3d at 1212 ("Reviewing the district court's dismissal of the complaint … raises only the question of whether the state-law claims were subject to *defensive* preemption.").

A state-law claim is defensively preempted under ERISA if it "relates to" an ERISA plan. 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws as they may or may hereafter relate to any employee benefit plan …."). "A [state] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*,

12

463 U.S. 85, 96-97 (1983). "[T]he sweep of ERISA preemption is broad, applying well beyond those subjects covered by ERISA itself." *Jones*, 457 F.3d at 1179-80 (citing *Shaw*, 463 U.S. at 98-99).

Here, Plaintiff's claims for fraud, suppression/concealment, and deceit all relate to the existence and amount of Corine Woods' life insurance coverage under an ERISA plan (the AEA group policy) and Plaintiff's rights as a beneficiary under that plan. Plaintiff's fraud claim is based on the allegation that AUL misrepresented that benefits were not payable under the plan because Corine Woods had not applied for continuation of her insurance coverage. (Doc. 1 at ¶¶ 46-47). Her suppression/concealment claim is based on the allegation that AUL concealed the true facts regarding Corine Woods's application for continuation of coverage and the amount of her coverage. (*Id.* at ¶52). And her deceit claim is similarly based on the allegation that AUL falsely represented the amount of Corine Woods's coverage to induce her to sign a release. (*Id.* at ¶¶ 65-66). All of these claims are premised on the existence of the ERISA plan and Plaintiff's alleged entitlement to benefits under the plan. In fact, even Plaintiff herself states in her opposition to AUL's motion to dismiss/strike that AUL's alleged misrepresentations and suppressions were "critical to the policy's existence and to Plaintiff's rights as a claimant/beneficiary." (Doc. 10 at 15). If the plan did not exist, or if Plaintiff had no claim to benefits under the plan, then she would have no

13

fraud, suppression/concealment, or deceit claims to assert against AUL. All three claims have a "connection with" the ERISA plan and, consequently, are preempted by ERISA. *See, e.g., Sanson v. General Motors Corp.*, 966 F.2d 618, 621 (11th Cir. 1992) (holding that ERISA preempted a fraudulent representation claim where the misrepresentation related to the plaintiff's benefits under a retirement plan and "the [fraud] statute would not apply to this case without the existence of the retirement plan"); *Lewis*, 2015 WL 1475610, *7 ("Lewis alleges that [the defendants] … made misrepresentations and suppressed material facts concerning her life-insurance policy. These claims not only refer to the … ERISA-covered plan, but are based entirely on the plan. They are classic examples of state-law claims that relate to an ERISA plan and are thus preempted under federal law.").

In support of her contention that her fraud, suppression/concealment, and deceit claims are not preempted by ERISA, Plaintiff relies primarily on a single case, *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402 (11th Cir. 1994). *Forbus*, however, bears no resemblance to this case. In *Forbus*, the plaintiffs alleged that Sears had misrepresented that the facility where they worked was closing and that they would be terminated without benefits unless they elected to "involuntarily" retire and participate in a retirement benefits program. *Id.* at 1403-04. The plaintiffs elected to resign, but later discovered that the facility was being kept open and that younger workers were being hired to replace them. *Id.* at 1404.

They filed suit against Sears, alleging that Sears had fraudulently induced them to resign. *Id.* The Eleventh Circuit held that the plaintiffs' fraud claims did not "relate to" an ERISA plan and were not preempted, noting that their claims "center[ed] on Sears' alleged fraud concerning the elimination of [their] jobs, not fraud concerning an ERISA plan or any other benefits package." *Id.* at 1405-06. The court further noted that the plaintiffs had not claimed any fraud "as it relates to the amount of benefits received" or made any allegation that Sears "misrepresented the availability of pension benefits to the plaintiffs." *Id.* at 1406.

Here, in contrast, Plaintiff's fraud, suppression, and deceit allegations relate to the availability and amount of benefits payable to Plaintiff under an ERISA plan. Again, these claims are based on the core allegations that AUL misrepresented that no insurance benefits were payable to Plaintiff because Corine Woods had not continued her coverage under the AEA group policy; concealed the existence of the documents reflecting that Corine Woods had increased her coverage and had continued her coverage at retirement; and misrepresented the amount of Corine Woods's continuation coverage. In other words, the misrepresentations and omissions alleged in Plaintiff's complaint relate directly to the subject ERISA plan.

Because Plaintiff's fraud, suppression/concealment, and deceit claims all relate to an ERISA plan, and because Plaintiff concedes that her other state-law

15

claims are preempted if ERISA applies, all of Plaintiff's claims are preempted by ERISA and due to be dismissed.

### C. Plaintiff's Demands for Punitive and Extra-Contractual Damages and for a Jury Trial

AUL has also moved to dismiss Plaintiff's demands for punitive and extra-contractual damages and to strike her demand for a jury trial.  Except to the extent that Plaintiff argues that Corine Woods's continuance coverage is not governed by ERISA and that her fraud, suppression/concealment, and deceit claims are not, in any event, preempted by ERISA, Plaintiff does not address or dispute AUL's assertions that punitive and extra-contractual damages are not recoverable under ERISA and that plaintiffs are not entitled to trial by jury in ERISA cases.  She effectively concedes that if ERISA applies and if her state-law claims are preempted by ERISA—as the court has held—then she is not entitled to recover any punitive or extra-contractual damages and is not entitled to a jury trial.

As AUL asserts in its motion to dismiss/strike, and as Plaintiff effectively concedes, punitive and extra-contractual damages are not recoverable under ERISA.  *See* 29 U.S.C. § 1132(a) (A civil action may be brought under ERISA by a beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" and "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or … to obtain other

appropriate equitable relief …."); *Godfrey v. BellSouth Telecomm., Inc.*, 89 F.3d 755, 761 (11th Cir. 1996) ("The District Court did not err in holding that extra-contractual damages are no available in this case; a plan beneficiary can sue to enforce her rights under the plan and under ERISA, and for equitable relief, but not for punitive or compensatory damages."); *Bishop v. Osborn Transp., Inc.*, 838 F.2d 1173, 1174 (11th Cir. 1988) ("Congress did not intend the recovery of punitive damages under section 1132(a).").

Likewise, plaintiffs are not entitled to jury trials in ERISA actions. *See, e.g., Rolland v. Textron, Inc.*, 300 F. App'x 635, 636 (11th Cir. 2008) ("It is well-settled that plaintiffs bringing ERISA claims are not entitled to jury trials under ERISA because such claims are equitable in nature."); *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1287 n. \*\* (11th Cir. 1998) ("The district court was correct in granting [the defendant's] motion to strike [the plaintiff's] demand for a jury trial on the ERISA claim. Relief under ERISA is limited to equitable remedies.").

Therefore, because Plaintiff's claims are all preempted by ERISA, she is not entitled to recover punitive or extra-contractual damages and is not entitled to a trial by jury.

### III.  CONCLUSION

Plaintiff's state-law claims are all subject to and preempted by ERISA. Accordingly, AUL's motion to dismiss Plaintiff's state-law claims, to dismiss her

demands for punitive and extra-contractual damages, and to strike her demand for a trial by jury (doc. 6) is due to be granted. Plaintiff will be afforded two weeks to amend her complaint to plead her claims under ERISA.

An appropriate order consistent with this opinion will be entered.

**DONE,** this 13th day of November, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge